IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THERMO FINNIGAN LLC,
        Plaintiff and
        Counterclaim Defendant,

v.

APPLERA CORPORATION,
        Defendant and
        Counterclaim Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: 04-1505 GMS

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Plaintiff Thermo Finnigan LLC will take the oral deposition of Defendant Applera Corporation under Rule 30(b)(6) of the Federal Rules of Civil Procedure, on the topics set forth in the attached Schedule A at a mutually agreeable date, time, and location to be determined.

The deposition will be conducted before an officer authorized by law to administer oaths, and the testimony will be recorded stenographically and by videotape. The deposition shall continue day to day until completed.

Pursuant to Rule 30(b)(6), each Defendant is required to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf concerning the subject matters described in Schedule A, attached hereto.

-1-

RLF1-2965469-1

-2-

*Kelly E. Farnan*
Frederick L. Cottrell, III  (#2555)
(Cottrell@RLF.com)
Kelly E. Farnan  (#4395)
(Farnan@RLF.com)
Richard, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys for Thermo Finnigan LLC

OF COUNSEL:

William F. Lee
Wayne L. Stoner
Stephen M. Muller
Michael R. Dube
Lauren B. Fletcher
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000


Dated:   January 4, 2006

## SCHEDULE A

### Definitions

1.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Concerning" means relating to, alluding to, referring to, constituting, describing, discussing, evidencing, or regarding.

3.      "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and shall be construed to mean, without limitation, any written, printed, typed, stored, photostated, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not. "Document" specifically includes all forms of electronic data. A draft or nonidentical copy is a separate document within the meaning of this term.

4.      "Identify" when referring to a document, means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of this document; and (d) author(s), addressee(s), and recipient(s).

5.      "Identify" when referring to a Person, means to give, to the extent known, the person's full name, present or last known address, country of citizenship, and, when referring to a natural person, the present or last known place of employment. Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requests.

RLF1-2965469-1

6.  "Identify" as used herein to apply to an oral communication shall mean to state the date and place of the communication, the substance thereof, and to identify all persons who participated in or heard the communication.

7.  "Thermo" means Thermo Finnigan LLC, its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, corporate parents, predecessors, subsidiaries, affiliates, divisions, or departments, its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, predecessors, subsidiaries, affiliates, divisions, or departments. "Thermo" includes without limitation Thermo Electron Corp.

8.  "Applera" and "Defendant" mean Applera Corporation, its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, corporate parents, predecessors, subsidiaries, affiliates, divisions, or departments.

9.  "Person" means any natural person, business, legal, or governmental entity or association and the officers, directors, employees, agents, consultants and attorneys thereof.

10.  The term "'654 Patent" refers to U.S. Patent No. 5,385,654.

11.  "License" or "licensee" means and includes each and every sub-licensee or sub-license.

12.  The term "Defendant's Accused Products" refers to (a) all versions (past, present, and in development) of all products identified by Applera in response to Interrogatory No. 1 of Thermo Finnigan LLC's First Set of Interrogatories ("Thermo Interrogatory No. 1"), (b) any and all products including or incorporating such versions, and (c) any additional Applera product or

-4-

-5-

service constituting or incorporating the same technology. This applies to all new products and new versions, and to any product using the same or similar technology.

13. The term "Additional Defendant's Product(s)" means each additional product that is sold with, offered for sale with, bundled with, installed with, incorporated with, promoted with, distributed with, or marketed with a Defendant's Accused Product.

14. The term "Defendant's Service(s)" means any and all services (e.g., repair contract, service contracts) that are sold with, provided with, and/or offered for sale with a Defendant's Accused Product.

RLF1-2965469-1

-6-

## Topics for Examination

### A.    Defendant's Accused Products

1.    By name, model number, and any other relevant designation, the identity of each Defendant's Accused Product, including each version thereof. This includes any Applera product that itself incorporates or includes a Defendant's Accused Product, such as being sold with, incorporated within, or attached to a Defendant's Accused Product. This includes without limitation each any every separate product identified in response to Thermo Interrogatory No. 1.

2.    Separately for each product identified under Topic 1, the conception, development, design, engineering, operation, and programming of such product, including without limitation its software.

3.    Separately for each Defendant's Accused Product, a detailed description of any differences from the first version of such product to each and every later version. This includes without limitation a detailed description of each and every change made to any Defendant's Accused Product as compared to any other Defendant's Accused Product.

4.    Separately for each Defendant's Accused Product, any and all modification(s) or change(s) made to the operation of such Product by or for any customer.

5.    Separately for each Defendant's Accused Product, the instances and ways in which Defendant's customers set up, test, and/or use such Product. This includes without limitation all communications between Defendant and customers concerning the same.

6.    Separately for each Defendant's Accused Product, the instances and ways in which Defendant set up, test, and/or use such Product.

7.    To the extent not covered by previous Topics, and separately for each Defendant's Accused Product, a detailed description of:

      i.    the manner in which each such product controls the temperature of a capillary during electrophoresis.

      ii.    the manner in which each such product monitors a sample at different wavelengths.

      iii.    The characteristics and composition of the sample.

      iv.    The composition, characteristics, purpose, and operation of the electroosmotic flow modifier.

      v.    the manner in, and extent to which, any customer can or does alter the operation of each such product so as to effect items (i) or (ii).

-7-

8.      Separately for each version of each Defendant's Accused Product, the identity by Bates number of documents sufficient to corroborate the testimony on Topics 1-7.

9.      Separately for each version of each Defendant's Accused Product, the identity and location of documents (including electronic documents) that relate to Topics 1-7.

10.     Separately for each Defendant's Accused Product, the role and involvement in the design of such product by each Person identified in response to Thermo Interrogatory Nos. 4 and 9.

11.     The identity by Bates number, and an explanation of, the organizational charts of Applera that relate to Topics 1-7.

12.     Separately for each version of each Defendant's Accused Product, the identity by Bates number of documents sufficient to corroborate the testimony on Topic 7.

13.     The business or financial relationship between Defendant and any non-employee Person with respect to any product or service provided by or on behalf of such Person that concerns the design, engineering, operation, or programming of any Defendant's Accused Product.

14.     A detailed description of any and all efforts by Defendant to change the design of any Defendant's Accused Product after learning of the '654 Patent. This includes without limitation any changes to any Defendant's Accused Product that Defendant made, are making, or contemplated making, after Defendant learned of the '654 Patent.

15.     Any design around and/or alternative technology or method that could be used as a commercially viable alternative to the patented technology.

16.     Separately for each Additional Defendant's Product, a basic description of the product, its purpose, and its operation.

17.     Separately for each Defendant's Service, a basic description of the service and its purpose.

18.     Separately for each Topic, the identity of 3 Defendant's employees or former employees most knowledgeable about Topics 1-18.

**B.     Sales and Marketing**

19.     Additional details and explanation concerning the response to Thermo Interrogatory No. 5, including without limitation (a) the method by which Defendant's identified the accused products, and (b) the policies, procedures, practices, and conclusions of Defendant in calculating and accounting for unit sales, revenue, costs, and profit.

RLF1-2965469-1

20.    To the extent not duplicative of Topic 19, any policy or method of accounting relevant to the sale of any Defendant's Accused Product.

21.    A general history of the development, sales, and marketing of all Defendant's capillary electrophoresis and DNA sequencing products and product lines (whether accused or not).

22.    A history of Defendant's conduct and analysis in marketing, promoting, distributing, and/or pricing any product that constitutes or incorporates a Defendant's Accused Product. This includes without limitation:

    a.    The non-sale distribution of each of Defendant's Accused Products, for examples as betas, demos, or evaluations.

    b.    Pricing decisions for list price, retail price, preferential pricing, discounting structures or schedules, OEM prices, volume discounts, and bundled pricing.

    c.    The history of how each Defendant's Accused Product was "brought to market" including beta testing, market and pricing analysis, determination of product operation and characteristics, and distribution.

    d.    Naming and/or branding decisions.

    e.    Overall marketing plans and strategies of Defendant that in any way relate to the Defendant's Accused Products.

    f.    Business plans and forecasts for Defendant's Accused Products in particular and capillary electrophoresis and DNA sequencing products generally.

    g.    Any and all description or analysis of the market for Defendant's Accused Products.

    h.    The content and meaning of organizational charts of Defendant sufficient to show the organizational structure for marketing, sales, and pricing decisions.

23.    The actual and forecasted market share from January 31, 1995 to January 31, 2003 of any and all Defendant's Accused Products, including without limitation the method of determining such market share.

24.    Separately for each Defendant's Accused Product, Defendant's projected revenues, projected costs, and projected profits, from January 31, 1995 to January 31, 2003, including Defendant's methods of projecting.

RLF1-2965469-1

25.     The identity, by Bates number, of documents sufficient to corroborate the testimony on Topics 19-24.

26.     Separately for each Additional Defendant's Product, how such product is sold, offered for sale, promoted, distributed, and/or marketed with a Defendant's Accused Product.

27.     Separately for each Defendant's Service, how such Service is sold, offered for sale, promoted, distributed, and/or marketed with a Defendant's Accused Product.

28.     Separately for each Additional Defendant's Product, and Defendant's Service, how Defendants account for the unit sales, revenue, costs, and profits of such product/service in conjunction with the unit sales, revenue, cost, and profits of each Defendant's Accused Product.

29.     Separately for each Topic, the identity of 3 Defendant's employees or former employees most knowledgeable about Topics 19-28.

## C.     Licenses

30.     Defendant's customs, practices, and policies (whether formal or informal) for negotiating and entering patent licenses and cross-licenses (both "licensing-in" and "licensing-out").

31.     Defendant's customs, practices, and policies (whether formal or informal) for negotiating and entering licenses and cross-licenses concerning capillary electrophoresis and/or DNA sequencing.

32.     The identity, by Bates number, of any Defendant's license (license in or license out) that constitutes or concerns capillary electrophoresis and/or DNA sequencing.

33.     Separately by year, the royalties and royalty rates paid and/or received on each license identified in Topic 32.

34.     The identity by Bates number of all Licenses entered into by any Defendant.

35.     Separately by year, the royalties and royalty rates paid and/or received on each license identified in Topic 34.

36.     Any industry customs, practices, or policies with respect to licensing that Defendant's contend are relevant to this lawsuit.

37.     Any negotiations, discussions, agreements, or contracts concerning the indemnification of any Person that relate in any way to any claim, counterclaim, or defense in this lawsuit.

38.     Separately for each Topic, the identity of 3 Defendant's employees or former employees most knowledgeable about Topics 30-37.

**D.     Willful Infringement**

39.     The individuals at Applera who first became aware of the '654 patent, how such awareness came about, and any action taken in response. This includes, without limitation, detailed information about the prosecution of U.S. Patent No. 6,372,106.

40.     Any and all analysis, investigation, or discussion undertaken to determine infringement, validity, or enforceability of the '654 patent.

41.     Any and all advice of counsel sought or received with respect to infringement, validity, or enforceability of the '654 patent.

42.     Any and all communications to, from, or about any counsel referenced in Topic 41.

43.     Any communications within or between Defendant and/or counsel, concerning Topics 39-42.

44.     Any policy, practice, or custom of Defendant that concerns investigating allegations of patent infringement.

45.     Any policy, practice, or custom of Defendant that concerns becoming and/or staying informed about patents that issue in the field of capillary electrophoresis.

46.     Separately for each Topic, the identity of 3 Defendant's employees or former employees most knowledgeable about Topics 39-45.

RLF1-2965469-1

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2006, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filings, and hand

delivered, to the following:

> Josy W. Ingersoll
> Adam W. Poff
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19899-0391

I hereby certify that on January 4, 2006 I sent the foregoing document by Federal

Express, next business day delivery,  to the following non-registered participants:

> Walter E. Hanley, Jr.
> James Galbraith
> Huiya Wu
> Kenyon & Kenyon
> One Broadway
> New York, NY  10004
>
> William G. James, II
> Fred T. Grasso
> Kenyon & Kenyon
> 1500 K Street N.W., Suite 700
> Washington, DC  20036

*Kelly E. Farnan*
Kelly E. Farnan (#4395)
Farnan@RLF.com

RLF1-2850239-1