IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THERMO FINNIGAN LLC,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>v.<br><br>APPLERA CORPORATION,<br><br>    Defendant and<br>    Counterclaim-Plaintiff. | Civil Action No. 04-1505-GMS |

**NOTICE OF DEPOSITION OF THERMO FINNIGAN LLC
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Applera Corporation ("Applera"), through their attorneys, will take deposition upon oral examination of Thermo Finnigan LLC ("Thermo") at a time and place to be mutually agreed upon by the parties. The deposition will be taken before a notary public or other officer duly authorized to administer oaths and take testimony, and will be recorded by stenographic means. The deposition may be audiotaped and/or videotaped.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Thermo is hereby notified of its obligation to designate one or more officers, directors, or managing agents, or other persons who consent to testify on Thermo's behalf with respect to the matters set forth on the attached Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to Thermo.

The Definitions and Instructions set forth in Applera's *First Set of Requests of Documents Requests Directed to Plaintiff (Nos. 1-104)* shall apply to this notice as if fully set forth herein.

January 11, 2006

*[signature]*

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Walter E. Hanley, Jr.
James Galbraith
Huiya Wu
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

William G. James
Fred T. Grasso
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, D.C. 20036
(202) 220-4200

*Attorneys for Defendant and Counter-Plaintiff Applera Corporation*

## SCHEDULE A

## MATTERS ON WHICH EXAMINATION IS REQUESTED

A.  Thermo's Products and the '654 Patent

1. The conception and reduction to practice of the subject matter of claim 11 or 15 of the '654 patent.

2. The preparation, filing, and prosecution of the patent application that issued as the '654 patent, or any foreign counterpart application of the '654 patent.

3. The prior art to the claimed subject matter known to the inventors, their attorneys, or other representatives involved with the filing or prosecution of the application that issued as the '654 patent.

4. The design, development, use, purpose, operation, testing or analysis of the subject matter of claim 11 or 15 of the '654 patent.

5. The benefits or advantages, if any, of the subject matter of claim 11 or 15 of the '654 patent.

6. Any effort or attempt by Thermo to commercialize an instrument covered by the subject matter of claim 11 or 15 of the '654 patent.

7. The conception, design, research, development, engineering, structure, purpose, operation, performance, manufacture, and programming by, or in conjunction with, Thermo of any device capable of carrying out the method claimed in claim 11 or 15 of the '654 patent, including but not limited to the identity of each instrument by product name, model number, version, or any other relevant designation, any related software.

8. To the extent not covered by Topic No. 7, the conception, design, research, development, engineering, structure, purpose, operation, performance, manufacture, and

programming of the SpectraPHORESIS® 1000 and any software loaded onto or designed for use with that device.

9. The operation of the SpectraPHORESIS® 1000 and any software loaded onto or designed for use with that device, including but not limited to a detailed description of the operation of the SpectraPHORESIS® 1000 as set forth in the Start-Up Guide and Hardware Reference Manual at TCE0000077-TCE0000428 and the Software Training and Reference Manual at TCE0001907-0002215.

10. The identity and role of any Thermo employee, Thermo former employee, or non-employee in the conception, design, research, development, engineering, structure, purpose, operation, performance, manufacture, and programming by, or in conjunction with, Thermo of any device capable of carrying out the method claimed in claim 11 or 15 of the '654 patent.

11. The identity and role of any Thermo employee, Thermo former employee, or non-employee in the drafting, editing, or preparation of any SpectraPHORESIS® 1000 manual, including but not limited to the author(s) of the Start-Up Guide and Hardware Reference Manual at TCE0000077-TCE0000428 and the Software Training and Reference Manual at TCE0001907-0002215.

12. Separately for each instrument identified in response to Topic Nos. 7 and 8, a detailed description of any difference from the first version of such an instrument to each and every later version, including but not limited to any difference in design, structure, operation, and performance.

13. Separately for each instrument identified in response to Topic Nos. 7 and 8, a detailed description of any instance or way in which Thermo or its customers set up, test, or use such instrument, and any instance or way in which Thermo or its customers modify the operation

of such instrument, including but not limited to any communication between Thermo and any customer concerning the same.

14. To the extent not covered by the previous Topics, and separately for each instrument identified in response to Topic Nos. 7 and 8, a detailed description of how each instrument is capable of simultaneously monitoring a sample at two different wavelengths, how such monitoring is carried out, how it is capable of maintaining the temperature in a capillary to within ± 0.5° C, how such maintaining is carried out, the characteristics and composition of the sample, and the composition, characteristics, purpose, and operation of the electroosmotic flow modifier.

15. Any design around, alternative manufacturing process, or alternative technology or method that could be used as a commercial alternative to the patented technology claimed in claim 11 or 15 of the '654 patent.

**B.    Sales and Marketing**

16. Separately for each instrument identified in response to Topic Nos. 7 and 8, a detailed description of the manufacture, marketing, offer for sale, sale, promotion, demonstration, or distribution of each instrument prior to July 7, 1993.

17. Separately for each instrument identified in response to Topic Nos. 7 and 8, a detailed description of when such instrument was first manufactured, first marketed, first offered for sale, first sold, first promoted, first demonstrated, or first distributed, and how such instrument was manufactured, marketed, offered for sale, sold, promoted, demonstrated, or distributed.

18. Separately for each instrument identified in response to Topic Nos. 7 and 8, the marketing, promotion, offering for sale, sales, and distribution of such instrument, including but not limited to all customer contacts, marketing materials, pricing, revenues, income, costs,

expenses, profits or losses, unit sales (actual and projected), financial or business projections, advertising plans, and pricing policies.

19. To the extent not covered by Topic No. 14, the marketing, promotion, offering for sale, sales, and distribution of the SpectraPHORESIS® 1000 and the SpectraPHORESIS® 1000 Software (also known as the CE1000 Software or the CE1000 Program), including but not limited to all customer contacts, marketing materials, pricing, revenues, income, costs, expenses, profits or losses, unit sales (actual and projected), financial or business projections, advertising plans, and pricing policies.

## C.  Thermo's Decision to File this Action

20. The facts and circumstances surrounding Thermo's decision to file the present action.

21. Any analysis, investigation or discussion undertaken to determine whether to bring the instant lawsuit and assert the '654 patent against Applera.

22. The facts and circumstances surrounding Thermo's first awareness of DNA analyzers made by or for, or sold by or for Applera ("Applera's DNA Analyzers") including but not limited to the ABI PRISM® 310 Genetic Analyzer, the ABI PRISM® 3700 DNA Analyzer, the ABI PRISM® 3100 Genetic Analyzer, the ABI PRISM® 3100-Avant Genetic Analyzer, the Applied Biosystems 3730 DNA Analyzer, or the Applied Biosystems 3730xl DNA Analyzer, or any prototypes thereof.

23. The facts and circumstances surrounding Thermo's first awareness of the structure and/or operation of Applera's DNA Analyzers.

24. Any disassembly, testing, analysis, or evaluation of Applera's DNA Analyzers by or on behalf of Thermo prior to filing the present action.

25. The source, extent, and timing of acquisition by Thermo of knowledge or information concerning the structure and/or operation of Applera's DNA Analyzers prior to filing the present action.

26. The facts supporting Thermo's contention that the '654 patent is infringed by Applera.

27. Any analysis, investigation, or discussion undertaken to determine infringement, validity, or enforceability of the '654 patent, including but not limited to any opinion of counsel Thermo sought or received.

28. The facts and circumstances surrounding Thermo's abandonment of the '654 patent by failing to pay the maintenance fee, including but not limited to why the maintenance fee was not paid and any consideration given or efforts made directed to reinstating the '654 patent.

29. Thermo's damages resulting from Applera's purported infringement of the '654 patent, including but not limited to, the theory, amount, and method of calculating said damages.

### D.    Licenses and Miscellaneous

30. Thermo's licensing of capillary electrophoresis or DNA sequencing technology, including but not limited to the identity of any licenses or license negotiations, customs, practices or polices for negotiating and entering into licenses, royalty rates, royalties paid and/or received, and the licensing of the '654 patent or the alleged invention(s) described therein.

31. Any Thermo corporate licensing customs, practices or polices.

32. Any industry licensing customs, practices or polices that Thermo contends is relevant to this action.

33. Any collaboration, partnership, other business/corporate relationship, agreement, or license entered into by Thermo concerning the subject matter of the '654 patent.

34. Thermo's corporate and organizational structure from 1993-2001 to the present, including but not limited to employee organization charts.

35. The identity of three Thermo employees or former employees most knowledgeable about the subject matter of the foregoing categories.

36. The nature, existence, and location of documents (including electronic documents) relating to the subject matter of the foregoing categories.

37. The Bates number of documents sufficient to corroborate the testimony on Topic Nos. 1-34.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on January 11, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Frederick L. Cottrell, III, Esquire
> Steve Fineman, Esquire
> RICHARDS, LAYTON & FINGER
> One Rodney Square
> Wilmington, Delaware 19801

I further certify that on January 11, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

> Wayne L. Stoner, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ Karen E. Keller
> Josy W. Ingersoll (No. 1088)
> Karen E. Keller (No. 4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> kkeller@ycst.com

> Attorneys for Defendant

DB01:1592468.1